Filed 6/23/26  P. v. Hodge CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. ANTHONY GENE HODGE, Defendant and Appellant. | F087972 (Super. Ct. Nos. BF196191A, BF191738A & BV016071A) **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  David R. Zulfa, Judge.

Rita Himes, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ian Whitney and Christina Hitomi Simpson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Anthony Gene Hodge was convicted by jury of second degree robbery, misdemeanor theft, and misdemeanor resisting a police officer. On appeal, he contends: (1) the trial court's admission of his statements violated his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*)); (2) the prosecution committed misconduct during closing argument; (3) the court prejudicially erred by sentencing him to the upper term; and (4) the court abused its discretion by failing to dismiss his prior serious felony conviction enhancement under section 1385.

We agree that the trial court prejudicially erred by sentencing defendant to the upper term on his robbery conviction. Accordingly, we vacate his sentence and remand for full resentencing. In all other respects, we affirm.

## PROCEDURAL SUMMARY

The District Attorney of Kern County filed an amended information on March 19, 2024, charging defendant with two counts of second degree robbery (Pen. Code, § 212.5, subd. (c);[1] counts 1 & 2), and one count of misdemeanor resisting a peace officer (§ 148, subd. (a)(1); count 3). It was further alleged that defendant had suffered a prior serious felony conviction (§ 667, subd. (a)), which also qualified as a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)). The amended information alleged several factors in aggravation as to counts 1 and 2, including that the offenses involved great violence (Cal. Rules of Court, rule 4.421(a)(1)),[2] defendant engaged in violent conduct indicating a serious danger to society (rule 4.421(b)(1)), his prior convictions were numerous or of increasing seriousness (rule 4.421(b)(2)), and he had served a prior prison term (rule 4.421(b)(3)).

On March 22, 2024, the jury found defendant guilty as charged on counts 2 and 3. On count 1, the jury found defendant not guilty of robbery, but guilty of the lesser

---

[1]     All further statutory references are to the Penal Code.

[2]     All further rule references are to the California Rules of Court.

included offense of misdemeanor theft (§ 487, subd. (c)).  Following a bifurcated proceeding, the jury found true the rule 4.421(b)(1) aggravating factor and the prior conviction allegation.

On April 30, 2024, the court sentenced defendant to the upper term of five years on count 2, which was doubled to 10 years under the "Three Strikes" law, plus five years for the prior serious felony conviction (§ 667, subd. (a)(1)).  The court further sentenced defendant to one year each on counts 1 and 3, to run concurrently with the sentence on count 2.[3]  On the same date, in Kern County Superior Court case No. BF191738A, the trial court revoked probation and sentenced defendant to the upper term of four years to run concurrently with the sentence on count 2 in this case.  In Kern County Superior Court case No. BV016071A, the court ordered defendant to serve 180 days to run concurrently with the sentence on count 2 in this case.

Defendant filed a timely notice of appeal on April 30, 2024.

## FACTUAL SUMMARY

### Cortez Incident – Count 1

On September 8, 2023, at around 2:00 p.m., L. Cortez and his two-year-old son were at a store in Bakersfield.  They left the store and got back into their car, and, as Cortez began to drive off, he noticed defendant was looking through a trashcan.  Soon after, defendant was right next to his car and asked Cortez through the passenger-side window, "Can I get some money, some change?"  After Cortez offered him a dollar bill, defendant reached into the window and took the dollar bill and started pulling at the door handle.

---

[3]    It appears the abstract of judgment does not list defendant's concurrent sentences for counts 1 and 3.  An order for the modification of this abstract of judgment is unnecessary since we are vacating the sentence.  In any event, we note the discrepancy so the trial court may ensure that the abstract of judgment reflects the court's pronouncements following defendant's resentencing.

3.

Defendant opened the car door and got inside, sitting halfway in the passenger seat with one of his legs outside of the car. Once inside the car, defendant took a pen from the middle console and held it in his hand. Defendant said to Cortez: "Hey, mother fucker. Give me your fucking money. I know you have money. Give me your fucking cell phone." Cortez took three $10 bills out of his wallet and gave them to defendant. Cortez said his son was in the car and told defendant to get out. Although Cortez did not feel afraid for himself, he was afraid for his son. Defendant got out of the car and Cortez drove away.

After driving off, Cortez returned to the area to search for defendant. Cortez found law enforcement and reported the incident.

### Hernandez Incident – Count 2

Around 2:30 p.m. on the same day, N. Hernandez was walking in the area to meet her son at the bus stop. Defendant walked by her and said something she did not understand.[4] Hernandez kept walking and then looked back and noticed defendant was walking towards her. Hernandez walked away from him in fear, and defendant moved closer and kept saying things in English. When defendant caught up with Hernandez, she had her phone in her hand. Defendant said more remarks in English to her, which she believed was defendant asking for her phone. Defendant forcefully took the phone from her hands and walked away.

### Arrest and Custodial Interrogation – Count 3

A law enforcement officer found defendant about a quarter mile from the store. Defendant ran away while the officer ordered him to stop. The officer detained defendant, who was then taken to the hospital.

---

[4] Defendant spoke English. Hernandez did not speak English. At trial, Hernandez testified with the assistance of a Spanish language interpreter.

4.

At the hospital, the officer read defendant his *Miranda* rights. Defendant agreed to speak with the officer.[5] The officer asked defendant why he ran away, and defendant said he was worried and did not want to "spread [his] s[**]t on the ground." During the interrogation, defendant explained to the officer he had asked a man with "a baby in the backseat" for some money to get food. Defendant stated, "I said, 'Man, give me that money, man.' And he said, 'I don't have no money.' I said, 'Yes, you do.' I snatched his wallet and I took it out his wallet, $30." When the officer asked defendant how he got the money, defendant said the man handed him the money and he "snatched" it from the man. Defendant further said, "I don't know what I was thinking, man. I was high, man. I've only been out for three days."

The officer asked what happened with the woman "that was walking down the street." Defendant said, "I seen her, I was using her phone to call, but they had me surrounded." When the officer asked who had him surrounded, defendant explained he was referring to gang members. The officer asked defendant if he had asked the female to use her phone. Defendant said, "[S]he said, 'No, no.' But I said, 'No, let me use this motherfucker.' I snatched it from her, man. I couldn't help it."

## DISCUSSION

### I. *Miranda* Waiver

Defendant contends his convictions must be reversed because his statements were obtained in violation of *Miranda*. Specifically, he argues his *Miranda* waiver was not valid because it was not made knowingly and intelligently.[6]

---

[5] The officer was wearing a body-worn camera which captured the interrogation. The video of the interrogation was played for the jury.

[6] Defendant does not challenge the voluntariness of his statements.

### A. Additional Background

Before trial, defendant filed a motion in limine to exclude the statements he made to the law enforcement officer at the hospital, asserting they were obtained in violation of *Miranda*. In the alternative, the motion requested a hearing to evaluate the statements' admissibility under Evidence Code section 402.

At a hearing, the trial court acknowledged defendant's motion and agreed to "conduct the Evidence Code [s]ection 402 hearing." The prosecution stated he had a "CD" of the custodial interrogation, but noted the CD was "not working on the computer" and he was "prepared to go forward" without the CD. The court replied: "Why don't we go forward and see where it takes us. A lot of times I don't need that in this particular hearing. If it's something that the Court thinks would be constructive, I can either view it outside of the court in chambers or we can finish up this hearing tomorrow morning."

The court held the Evidence Code section 402 hearing at which the prosecution called Bakersfield Police Officer Patrick Tramel. Tramel testified he read defendant his *Miranda* rights using his department-issued card, and that defendant stated that he understood those rights and responded affirmatively after each admonishment. He further testified defendant agreed to provide a statement.

On cross-examination, the following colloquy occurred at the start of defense counsel's questioning:

> "[DEFENSE COUNSEL:] On the day in question it was yourself who first engaged with [defendant] at or near the scene. Is that safe to say?
>
> "[TRAMEL:] Correct.
>
> "[DEFENSE COUNSEL:] And it was pretty hot that day?
>
> "[TRAMEL:] Yeah.
>
> "[DEFENSE COUNSEL:] And --

"[PROSECUTION:]  Objection.  Relevance.

"THE COURT:  I'll give him a little bit of leeway.  I think it goes to the totality of the circumstances but hopefully it's going somewhere, counsel.

"[DEFENSE COUNSEL:]  And when you did take him down, you both went to the ground in roughly the middle of the street?

"[TRAMEL:]  Yes.

"[DEFENSE COUNSEL:]  On asphalt?

"[TRAMEL:]  Yes.

"[DEFENSE COUNSEL:]  And not one time during that encounter did [defendant] complain of the heat, did he?

"[TRAMEL:]  I don't recall.

"[DEFENSE COUNSEL:]  And then you did say that you and [defendant] responded to Kern Medical?

"[TRAMEL:]  Correct.

"[DEFENSE COUNSEL:]  And he was there due to an injury to his ankle?

"[TRAMEL:]  Correct.

"[DEFENSE COUNSEL:]  And he wasn't complaining of any pain from that ankle, was he?

"[TRAMEL:]  I don't recall.

"[PROSECUTION:]  Objection, Your Honor.  I'm going to re-raise my objection at this point.

"THE COURT:  Now I'm wondering how it's relevant.

"[DEFENSE COUNSEL:]  It's going to go towards the mindset.

"THE COURT:  I'll give you some room there then."

Tramel testified he did not recall the time frame between when he first made contact with defendant and when he read defendant his *Miranda* rights, but he was with

7.

defendant for a "good chunk of the time."  Defense counsel then asked, "would it be safe to say [defendant] was incoherent at times?"  Tramel began to respond:

> "[TRAMEL:]  I can't say that.  I don't --

> "[DEFENSE COUNSEL:]  And in your training and experience as an officer, have you come across individuals who have been under the influence of drugs?

> "[PROSECUTION:]  Objection, Your Honor.  Relevance.

> "THE COURT:  How is that relevant to an objective standard?

> "[DEFENSE COUNSEL:]  It's whether or not [defendant] knowingly and voluntarily if he understood his rights as they were given to him.

> "THE COURT:  I'll allow it for some limited purpose.  Go ahead."

Defense counsel asked Tramel if it seemed to him that defendant was under the influence, and Tramel replied, "I don't recall."  Defense counsel confirmed with Tramel that he had written in the police report that defendant was high on "PCP."  When defense counsel asked if Tramel believed that defendant was high on PCP, the prosecution objected on relevance grounds.  The trial court sustained the objection, noting it thought defense counsel could "ask questions as to what this officer observed because again it's going to go to an objective [standard]."  Defense counsel then asked:

> "[DEFENSE COUNSEL:]  Now as you were reading the *Miranda* Rights to [defendant], did you -- in your observations did it seem that he was clear in thought process as you were talking to him?

> "[TRAMEL:]  He was clear enough to function.

> "[DEFENSE COUNSEL:]  Do you believe that he knowingly and voluntarily understood the rights you gave him?

> "[TRAMEL:]  He was clear enough to function.

> "[DEFENSE COUNSEL:]  When you say 'function,' do you mean just like breathe and talk?

8.

"[TRAMEL:]  He stated yes when I questioned him.

"[DEFENSE COUNSEL:]  During your interaction with him, he would ask various questions such as how long it took to get to the hospital?

"[TRAMEL:]  I don't recall that.

"[DEFENSE COUNSEL:]  And he was making requests to take a helicopter?

"[TRAMEL:]  I don't recall that.

"[DEFENSE COUNSEL:]  Is it safe to say that [defendant] did not comprehend completely what you were asking him?

"[PROSECUTION:]  Objection, Your Honor.  Speculation.

"THE COURT:  Based on your observations, do you have an opinion as to whether [defendant] understood the interaction with you?

"[TRAMEL:]  I believe he understood."

The court then explained its evidentiary rulings:

"This is a very limited hearing.  It is a foundational hearing under Evidence Code [s]ection 402.  That's why both parties have been restricted into what they could go into at this hearing.  If this statement is introduced during trial many of those restrictions will not be in place."

Before submitting the matter, defense counsel argued to the court:

"Your Honor, I don't believe that [defendant] was in the right mindset or mental state to possibly accept his rights as read to him.  The fact that he was functioning does not necessarily mean he understood his rights and I would ask that these statements made after *Miranda* be excluded based on [defendant] not knowingly and willingly answering the questions."

The court then denied the Evidence Code section 402 request, noting:

"At this time given the evidence presented at this hearing it is an objective standard.  There's no doubt that [defendant] was in custody.  There's no doubt that [defendant] was interrogated by Officer Tramel but it does appear to the Court on an objective standard that [defendant] was advised of his *Miranda* Rights.  He responded appropriately to the inquiries and then provided relevant information to the investigation.  And so for the

9.

purposes of whether they were taken and obtained in violation of *Miranda* I will find that they did not violate *Miranda* and if the People so choose they will be allowed to present those statements as part of their case in chief. And so as to [defendant's in limine motion] it is denied following the [Evidence Code section] 402 hearing."

At defendant's trial, the prosecution admitted into evidence the videotape of the custodial interrogation over defense counsel's renewed objection. A transcript of the video, as well as the video itself, was shown to the jury.

### B.     *Applicable Law and Standard of Review*

"The Fifth Amendment to the United States Constitution, which applies to the states by virtue of the Fourteenth Amendment, provides that no person may be compelled to be a witness against himself or herself." (*People v. Linton* (2013) 56 Cal.4th 1146, 1170–1171.) In *Miranda*, the United States Supreme Court " 'adopted a set of prophylactic measures to protect a suspect's Fifth Amendment right from the "inherently compelling pressures" of custodial interrogation.' " (*Linton*, at p. 1171.) "Pursuant to *Miranda*, a suspect 'must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.' " (*Ibid.*, quoting *Miranda*, *supra*, 384 U.S. at p. 479.)

These rights may be waived. (*People v. Leon* (2020) 8 Cal.5th 831, 843.) " '[T]he prosecution bears the burden of establishing by a preponderance of the evidence that the waiver was knowing, intelligent, and voluntary under the totality of the circumstances of the interrogation.' " (*Ibid.*) "This analysis requires an evaluation of both the defendant's state of mind and circumstances surrounding the questioning." (*Ibid.*) " ' " 'We independently determine from the undisputed facts and the facts properly found by the trial court whether the challenged statement was illegally obtained.' " ' [Citations.] Where, as was the case here, an interview is recorded, the facts surrounding the

10.

admission or confession are undisputed and we may apply independent review." (*People v. Duff* (2014) 58 Cal.4th 527, 551.)

### C. Forfeiture

We first address forfeiture in the context of defendant's entire *Miranda* claim. The People argue defendant forfeited the claim by "fail[ing] to press for a ruling on whether his *Miranda* waiver was knowing and intelligent." We are not convinced. The trial court stated it considered whether his statements were "taken and obtained in violation of *Miranda*," and ruled that the admittance of those statements did not violate *Miranda*. We cannot conclude on this record that the court was in any way " 'deprive[d] … of the opportunity to correct potential error in the first instance.' " (*People v. Valdez* (2012) 55 Cal.4th 82, 143; *People v. Lewis* (2008) 43 Cal.4th 415, 481, disapproved on another ground in *People v. Black* (2014) 58 Cal.4th 912, 919–920.) We therefore address the merits of defendant's claim.

The People further argue a certain portion of defendant's *Miranda* claim is forfeited. Specifically, as to defendant's claim that the trial court erred by not viewing the videotape of the interrogation, the People argue defendant forfeited this claim by failing to raise it below. We agree with the People.

Defendant forfeited this specific claim by failing to object below. First, it was the prosecution, not defense counsel, who mentioned the existence of the videotape for the court's viewing. When the court indicated viewing the videotape was not necessary and suggested going forward without viewing the videotape, defense counsel made no objection. The court did not revisit the subject of the videotape, nor was it asked to. We agree with the People that the claim was not preserved for appeal because the court was deprived of the opportunity to correct potential error in the first instance. (See, e.g., *People v. Valdez*, *supra*, 55 Cal.4th at p. 143.)

11.

### D. Scope of the Hearing

Defendant argues the trial court improperly limited the scope of the hearing, thereby preventing complete consideration of the totality of the circumstances. Specifically, he asserts the court improperly restricted defense counsel's examination regarding his intoxication, physical condition, and the "incoherent nature" of his answers to the officer's questions.

The court permitted examination into whether defendant had the capacity to understand the warnings given to him. The court allowed defense counsel to ask Tramel whether it was "pretty hot" on the day of the arrest, noting it thought it goes towards the totality of the circumstances. The court also allowed defense counsel to ask Tramel if it would be "safe to say" that defendant was "incoherent at times," whether he had encountered individuals under the influence of drugs through the course of his training and experience as an officer, whether "it seem[ed] [defendant] was under the influence," whether "it seem[ed] that he was clear in thought process" when Tramel was talking to him, and whether he believed that defendant knowingly and voluntarily understood his rights. The court also allowed defense counsel to inquire into the state of defendant's mindset by asking whether defendant complained of pain from the ankle injury he sustained.

The court only limited defense counsel in two separate instances, and neither were erroneous. First, the court sustained an objection to defense counsel's question to Tramel regarding if he "believe[d]" defendant was "high on PCP." But Tramel's beliefs are not relevant to the waiver inquiry, as the inquiry focuses on the defendant's state of mind. (See *People v. Williams* (2010) 49 Cal.4th 405, 428 [the knowing and intelligent waiver inquiry "is directed at an evaluation of the defendant's state of mind"].) Next, the prosecution objected on foundation grounds when defense counsel asked Tramel: "Is it safe to say that [defendant] did not comprehend completely what you were asking him?" Though the court did not explicitly sustain the objection, the court asked Tramel its own

question—if he had an opinion as to whether defendant understood the interaction with him. After Tramel answered the court's question, defense counsel had no further questions. The court did not improperly restrict the examination of Tramel in this regard, as Tramel could only testify about his observations of defendant during the interrogation. (See *People v. Rodriguez* (2014) 58 Cal.4th 587, 631 [" '[A]n examiner's question asking a lay witness to testify to facts that the witness has not personally observed, or to state an opinion not based on his or her own observations, calls for speculation and conjecture by the witness and is prohibited by' Evidence Code sections 702 and 800."].) Defendant fails to persuade us that the court's limited restrictions prevented the court's consideration of the totality of the circumstances. (*People v. Miranda-Guerrero* (2022) 14 Cal.5th 1, 16.)

To the extent defendant additionally asserts the court misunderstood "the nature" of the hearing, we are not persuaded. The court conducted a foundational hearing under Evidence Code section 402 to determine the admissibility of defendant's statements to Tramel after being given *Miranda* warnings. The court determined the admission of those statements did not violate *Miranda*.[7] We find no persuasive reason to conclude the court misunderstood the nature of the hearing.

### E.  Waiver of Miranda Rights

The transcript of the interrogation shows that after Tramel advised defendant of each of his *Miranda* rights, Tramel then asked, "[w]ith your rights in mind, do you wish to provide a statement?" Defendant replied, "Yes." Defendant then provided statements concerning the series of events that had happened earlier that day, including the separate

---

[7]     Defendant additionally argues that the trial court applied an incorrect legal standard in ruling that the statements were not illegally obtained. But under the applicable standard of review, we independently determine whether the statements were illegally obtained. (*People v. Duff, supra*, 58 Cal.4th at p. 551.) We conduct this independent determination, in part I.E, *post*.

incidents with Cortez and Hernandez, as well as his decision to flee from arrest. Tramel asked defendant questions throughout the interrogation, and defendant's responses to those questions were, for the most part, responsive to Tramel's questions. This assessment is supported by our viewing of the videotape.[8]

Defendant's waiver was made knowingly and intelligently under the totality of the circumstances. First, we note defendant had extensive prior experience with the criminal justice system. (See *North Carolina v. Butler* (1979) 441 U.S. 369, 374–375 ["[T]he question of waiver must be determined on 'the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' "]; *People v. Parker* (2017) 2 Cal.5th 1184, 1216 [noting the defendant's "extensive prior experience" with the criminal justice system in determining a knowing and intelligent *Miranda* waiver].) As discussed in part III, *post*, defendant was 58 years old at the time of the interrogation with a criminal record spanning approximately 40 years. This "familiarity bolsters the conclusion that defendant had 'full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.' " (*People v. Krebs* (2019) 8 Cal.5th 265, 302.)

Defendant asserts he was too impaired to knowingly and intelligently waive his *Miranda* rights. Specifically, he argues the waiver was invalid because of his "intoxication and stressed physical condition at the time of the interrogation."

A defendant's voluntary intoxication does not necessarily render *Miranda* waivers invalid. (*People v. Frye* (1998) 18 Cal.4th 894, 988, disapproved on another ground in

---

[8]     To the extent the People argue the trial court's decision not to view the videotape and its transcript at the Evidence Code section 402 hearing precludes us from viewing either one on appeal, we disagree. We note the videotape and its transcript were later shown to the jury and the court during defendant's trial. The videotape and its transcript are relevant to our independent examination of the totality of the circumstances. The authority relied upon by the People, *People v. Welch* (1999) 20 Cal.4th 701, is distinguishable.

*People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)  For a waiver to be invalid due to intoxication, the defendant must have been "so impaired" by the intoxicating substance that he was "incapable of freely and rationally choosing to waive his rights and speak with the officers."  (*Frye*, at p. 988; see *People v. Clark* (1993) 5 Cal.4th 950, 988 ["this court has repeatedly rejected claims of incapacity or incompetence to waive *Miranda* rights premised upon voluntary intoxication or ingestion of drugs, where, as in this case, there is nothing in the record to indicate that the defendant did not understand his rights and the questions posed to him"], disapproved on another ground in *People v. Doolin*, *supra*, 45 Cal.4th at p. 421, fn. 22.)

Defendant's claim of incapacity is belied by the record.  Tramel testified at the Evidence Code section 402 hearing that defendant "was clear enough to function" during the interrogation.  This assessment is supported by the interrogation video and transcript. Tramel read each right from his department-issued card and defendant indicated he understood those rights.  When Tramel asked if defendant wished to provide a statement, defendant stated, "Yes," and began providing his statement before Tramel could finish his next question.  (See *People v. Parker*, *supra*, 2 Cal.5th at p. 1216 [" 'if a custodial suspect, having heard and understood a full explanation of his or her *Miranda* rights, then makes an uncompelled and uncoerced decision to talk, he or she has thereby knowingly, voluntarily, and intelligently waived them' "].)

The rest of the interrogation further supports our conclusion.  Defendant's responses were, for the most part, responsive and coherent, as most of his responses directly answered the questions posed by Tramel.  Notably, defendant repeated Tramel's question back to Tramel before giving his answer on several occasions.  Moreover, many of the factual details of the two separate incidents given by defendant during the interrogation were consistent with, and at times mirrored, the information provided by both Cortez and Hernandez.  Although we observe defendant occasionally lost his focus, and some of his remarks appear irrational or incoherent, these observations do not

establish defendant was incapable of waiving his *Miranda* rights in light of the ample evidence to the contrary. (See *People v. Cunningham* (2015) 61 Cal.4th 609, 645 ["Even if some of defendant's behavior was irrational or bizarre, there is no evidence his 'abilities to reason or comprehend or resist were in fact so disabled that he was incapable of free or rational choice.' "]; *People v. Jackson* (1989) 49 Cal.3d 1170, 1189 [the defendant was not incapacitated since he was able to comprehend and answer the questions posed to him despite having ingested PCP and other drugs]; see also *People v. Frye*, *supra*, 18 Cal.4th at p. 988 [a defendant with bloodshot eyes and slurred speech was not too impaired to validly waive *Miranda* rights].) Our conclusion is not altered by the facts that defendant sustained an ankle injury during the police pursuit or the "pretty hot" weather on that day.

An examination of the totality of the circumstances surrounding the interrogation shows that defendant's *Miranda* waiver was made knowingly and intelligently.

## II. Prosecutorial Error

Defendant argues the prosecution's closing argument misstated the law of specific intent, impermissibly reducing the prosecution's burden of proof. The People contend defendant forfeited the issue by failing to object below. On the merits, the People contend the prosecution's arguments did not amount to prosecutorial error. We agree with the People on both points.

### A. Additional Background

During trial, the court instructed the jury, in relevant part:

"The defendant is charged in Counts 1 and 2 with robbery, in violation of … [s]ection 212.5[, subdivision ](c). To prove the defendant guilty of this crime, the People must prove: One, the defendant took property that was not his own; two, the property was in the possession of another person; three, the property was taken from the other person or their immediate presence; four, the property was taken against that person's will; five, the defendant used force or fear to take the property or to prevent the

16.

person from resisting; and, six, when the defendant used force or fear, he intended to deprive the owner of the property permanently.

"The defendant's intent to take the property must be formed before or during the time he used force or fear. If the defendant did not form this required intent until after using the force or fear then he did not commit robbery. If you find the defendant guilty of robbery it is robbery of the second degree."

Regarding voluntary intoxication, the court instructed the jury:

"You may consider evidence, if any, of the defendant's voluntary intoxication in a limited way. You may consider that evidence in deciding whether the defendant acted with intent to permanently deprive the owner of property as required in Counts 1 and 2 and the lesser included offenses to those crimes. A person is voluntarily intoxicated if they become intoxicated by willingly using any intoxicating drug, drink or other substance knowing it could produce an intoxicating effect or willingly assuming the risk of that effect."

During closing argument, the prosecution stated, in relevant part:

"Lastly when the defendant used for[ce] or fear, he intend[ed] to deprive the owner of the property permanently. Again the intent must be formed before you use force or fear. When the defendant used force or fear, did he intend to take the cell phone and give it back? Well, no. When he took the cell phone is it reasonable to conclude that he had the wherewithal to I'm going to take this phone but return it later? That was his consideration. Consider the three supporting pieces of evidence. One, the defendant did not have to call anyone. If he wanted to use her cell phone to make a quick call and give it back, why did he not use it right there on the spot? Also once he found out that the phone was locked, why did he not try to ask her to unlock the phone so that he can make the call? There's no evidence showing that he intended to just borrow the phone for a quick second. Secondly, the defendant and Ms. Hernandez are strangers. Again it's the same point. He walked away with a cell phone. Did he have the intent to give it back? Well, how is he going to find her, a complete stranger? He can't even call her because he has her phone. Thirdly, the defendant never returned the phone. Again what's his intent? Well, it's what he does. He keeps it. The officers returned it. The officers returned the cell phone. I argue to you that Element 6 has been met and therefore all 6 elements of robbery have also been met in Count 2 robbery against Ms. Hernandez and I would ask you all to find the defendant guilty of Count 2."

17.

Defense counsel addressed the point made by the prosecution:

"Look at the way [defendant] was acting prior. He's going through gar[b]age cans. He's acting bizarre outside of the liquor store. He's still in the same area. I mean, this is all took place in a block. You think he's really trying to rob somebody and just hang around out on the streets literally right where he took the phone from? Literally he was taken into custody on that same block. He's out of his mind and we'll get to that in a little bit. He wasn't intending anything. He was just out of his mind."

On rebuttal, the prosecution stated, in part:

"Voluntary intoxication as [defense counsel] said, I agree to this point, is something that, yeah, if you find that the defendant voluntarily took a drug and voluntarily became under the influence that's something you could consider in determining whether or not the defendant could form the intent to do what he did."

The prosecution also stated he intended to ask the jury to "apply the evidence in this case to show that the defendant clearly had the mental capacity to mean to do exactly what he did."

The prosecution then discussed with the jury a hypothetical situation about a person who has eaten lunch at a fast-food restaurant but does not remember doing so. The prosecution stated:

> "[T]his is going to be the last thing I do but before I apply the evidence in this case to show that the defendant clearly had the mental capacity to mean to do exactly what he did, just consider with me this hypothetical. You all remember the criminal who ate lunch at [a fast-food restaurant]. Imagine that person wakes up on a Saturday morning after one heck of a night. That person wakes up, head is throbbing and his ears are ringing. There's a doorbell at the door that sounds to him like fire alarms going off. The fridge that's running in the living room that sounds like an earthquake to him. So he gets a bit startled and he gets up and he plants his two feet on the ground and on the ground he hears some crackles and he looks down and there's ten [fast-food] wrappers. Now of course he doesn't remember exactly what happened last night. He doesn't remember how those [fast-food] wrappers got there. But does that mean that the [fast-food] wrappers are not there? That nothing happened last night? Well of course not. In fact what actually happened last night was that after many drinks and becoming intoxicated what happened was he got extremely

18.

hungry as one is prone to do. I'm sure you've all never experienced that though. But after forming that thought of hey I'm hungry then that person what he did is form the next logical conclusion and said I'm going to address this hunger by going to get food. Then that person followed, made the next logical thought and said I'm going to get food by going to a place that sells food. Then he followed that with I'm going to get to that place by getting in my car and making all of the necessary turns that are needed to get to that place and once at the drive through lane carefully goes through the drive through lane. When he gets to the menu, looks at the menu and carefully picks out a good meal. The moment that that person is looking at the menu although he is intoxicated out of his mind, does he have the specific intent to get food? Obviously. How else would he be doing that?"

The prosecution then compared the hypothetical to the facts of the instant case: "The evidence in this case did not show by any means that the defendant was so far gone that he was basically sleep walking or was a dead man walking. [Defense counsel] wants to use this voluntary intoxication to make you believe that really at the time the defendant got in his car -- got into Mr. Cortez's vehicle and he did what he did. When he did what he did to Ms. Hernandez that at that moment that the defendant did not even have two neurons firing to make a connection to form an intent to do what he did." "Well [defendant]'s forming the logical thought. I want to get something. I know that money could afford me food or a phone or whatever he wants. He's forming those logical thoughts. Ms. Hernandez, as he's approaching her, he's saying phone. What does he do? He takes it from her. That shows he intends to get the phone. And what does he do? He takes the phone." The prosecution concluded his rebuttal by arguing defendant had the requisite intent to take the money and the phone using fear and force.

### B.     Applicable Law and Standard of Review

"When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to [the] defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of

specific intent." (*People v. Hood* (1969) 1 Cal.3d 444, 456–457.) Intoxication is relevant to specific intent crimes, not general intent crimes. (*People v. Mendoza* (1998) 18 Cal.4th 1114, 1127.) "[A] drunk man is capable of forming an intent to do something simple, such as strike another, unless he is so drunk that he has reached the stage of unconsciousness." (*Hood*, at p. 458.)

"Advocates are given significant leeway in discussing the legal and factual merits of a case during argument." (*People v. Centeno* (2014) 60 Cal.4th 659, 666 (*Centeno*).) "However, 'it is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its … obligation to overcome reasonable doubt on all elements [citation].' " (*Ibid*.) " 'Improper comments falling short of this test nevertheless constitute misconduct under state law if they involve use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " (*People v. Bell* (2019) 7 Cal.5th 70, 111.) "When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*Centeno*, at p. 667.)

### C.    Forfeiture

On appeal, defendant asserts the prosecution committed misconduct at several points during his argument. However, defense counsel did not object to the challenged statements and thus forfeited the claims on appeal. (See *People v. Covarrubias* (2016) 1 Cal.5th 838, 894 [" ' "As a general rule, a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety." ' "].) In any event, to forestall defendant's alternative

claim of ineffective assistance of counsel, we exercise our discretion to address his claims on the merits. (See *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 [appellate courts have the authority to consider the merits of a forfeited claim].)

### D.    Analysis

Defendant takes issue with several of the prosecution's statements. First, he takes issue with the following statement to the jury: "When he took the cell phone is it reasonable to conclude that he had the wherewithal to [*sic*] I'm going to take this phone but return it later?" Defendant first argues the statement improperly reduced or shifted the burden of proof, since it was not his burden to show he had the intent to return the phone, but rather, the prosecution's burden to prove he had a specific intent to permanently deprive Hernandez of her phone.

This statement did not reduce or shift the burden to the defense. Instead, the statement relayed to the jury the evidence did not reasonably support a contrary inference that defendant intended to only temporarily deprive Hernandez of her cell phone. Before the statement in question, the prosecution stated to the jury: "When the defendant used force or fear, did he intend to take the cell phone and give it back? Well, no." Then, after questioning whether it was reasonable to conclude that defendant had the "wherewithal" to intend to give Hernandez her phone back, the prosecution discussed the evidence undermining such an inference. The statement did nothing more than question the reasonableness of an inference which was contrary to the prosecution's position. (*People v. Romero* (2008) 44 Cal.4th 386, 416 [prosecution may ask the jury to " 'accept the reasonable and reject the unreasonable' " during closing argument].) Accordingly, it did not improperly reduce or shift the burden to the defense. (See *ibid.* ["The prosecution must prove the case beyond a reasonable doubt, not beyond an unreasonable doubt."].)

Defendant further argues this statement constituted prosecutorial error because it misled the jurors as to what intent was needed for a conviction. According to defendant, the prosecution's statement suggested to the jury that defendant lacked the ability to form

21.

any intent when he took Hernandez's phone.  Defendant notes that if he could not form any intent, the "specific intent element" of the offense "was necessarily missing" as he could not have intended to permanently deprive Hernandez of her phone as required for the conviction.  Thus, defendant asserts this argument misled the jurors to believe the crime could be proven without an affirmative showing by the prosecution establishing beyond a reasonable doubt that he intended to permanently deprive Hernandez of her phone.

This argument relies on a faulty premise—that the prosecution's statement suggested to the jury that defendant lacked the ability to form any intent when he took Hernandez's phone.  As we stated above, the prosecution's statement relayed to the jury that the evidence did not reasonably support an inference that defendant intended to only temporarily deprive Hernandez of her cell phone.  But the statement does not reasonably suggest to the jury that defendant could not form *any* intent when he took Hernandez's phone.  (*Centeno*, *supra*, 60 Cal.4th at p. 667 [" 'In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' "].)  We therefore reject defendant's conclusion that the statement was misleading.

Defendant additionally argues the prosecution improperly suggested to the jury that defendant's "mere act of taking" Hernandez's phone satisfied the requisite specific intent of the offense.  Defendant highlights the portions of the prosecution's argument covering defendant's intent to take the phone.  But the prosecution's closing argument covered more than whether defendant had the intent to take the phone.  During another part of his argument, the prosecution told the jury:  "[T]he defendant never returned the phone.  Again what's his intent?  Well, it's what he does.  He keeps it."  While defendant identifies a part of the prosecution's argument only mentioning defendant's intent to take the phone, he fails to address the other portions of the argument clearly covering whether defendant had the specific intent to permanently deprive Hernandez of her phone.

Considering the context of the prosecution's entire argument, we cannot conclude that the prosecution misstated the law by "stripp[ing] the legal distinction between general and specific intent of any meaning."

Finally, defendant asserts that the prosecution misled the jury in several ways. We address first his issues with the prosecution's fast-food hypothetical scenario. According to defendant, this hypothetical was not only "ludicrous" but also "was not tailored to the specific intent requirement being addressed." He asserts this hypothetical could have misled the jury into believing the intent requirement for robbery had been satisfied by a lack of intent to return the phone or by a mere intent to take the phone.

Defendant's argument assumes the hypothetical scenario could be interpreted as addressing whether defendant possessed the required specific intent for the offense. We do not think such an interpretation is reasonable. Instead, the hypothetical scenario illustrated that it was possible for a person to possess intent even if that person was intoxicated "out of his mind." The prosecution's comments before and after the hypothetical scenario make the accuracy of this interpretation clear. The prosecution had just discussed voluntary intoxication. The prosecution stated he wanted to discuss this hypothetical scenario before "show[ing] that the defendant *clearly had the mental capacity* to mean to do exactly what he did." (Italics added.) At the end of the hypothetical scenario, the prosecution argued that the person "[o]bviously" would have the specific intent to get food even if he was "intoxicated out of his mind." And afterwards, the prosecution argued the evidence in this case "did not show by any means that the defendant was so far gone that he was basically sleep walking or was a dead man walking." Fairly construed, this hypothetical scenario could not reasonably have misled the jury as to the intent requirement for robbery. Accordingly, there was no reasonable likelihood the jury understood or applied these comments in an improper or erroneous manner. (*Centeno*, *supra*, 60 Cal.4th at p. 667.)

23.

Defendant also takes issue with several of the prosecution's statements made after the hypothetical. Specifically, when the prosecution stated to the jury:

> "The evidence in this case did not show by any means that the defendant was so far gone that he was *basically sleep walking or was a dead man walking*. [Defense counsel] wants to use this voluntary intoxication to make you believe … [w]hen he did what he did to Ms. Hernandez that at that moment that the defendant *did not even have two neurons firing to make a connection to form an intent to do what he did*." (Italics added.)

According to defendant, these statements suggested voluntary intoxication was relevant only if he lacked all capacity to control his actions.

Contrary to defendant's claim, the prosecution did not argue voluntary intoxication was relevant only if he lacked all capacity to control his actions. Read in the context of the prosecution's whole argument, these statements are most reasonably construed as arguments against any potential theories that defendant's intoxication prevented the ability to form specific intent. But it is not reasonable to interpret from these statements that the consideration of voluntary intoxication requires a determination that defendant lacked all capacity to control his actions. Further, we note the prosecution stated at another point of his argument that voluntary intoxication was "something you could consider in determining whether or not the defendant could form the intent to do what he did" if the jury finds "that the defendant voluntarily took a drug and voluntarily became under the influence." We therefore reject defendant's characterization of the prosecution's statements.

In sum, defendant fails to persuade us that the prosecution's statements at closing argument constituted prosecutorial misconduct.[9]

---

[9] Because we address his claim on the merits, we need not address his alternative claim for ineffective assistance of counsel for forfeiture.

### III. Imposition of the Upper Term

#### A. *Sufficiency of the Evidence*

Defendant contends insufficient evidence supports the aggravating factor (rule 4.421(b)(1)) found true by the jury. Specifically, he argues the Cortez incident did not involve "violent conduct," and the Hernandez incident did not involve violent conduct "distinctively worse" than an ordinary robbery. The People contend the aggravating factor was supported by substantial evidence. We agree with the People.

#### i. **Additional Background**

After the jury reached their verdicts on the substantive allegations, the trial court held a bifurcated jury trial on aggravating factors. As relevant here, the jury was asked to determinate whether, in the commission of the offense in count 2, defendant engaged in violent conduct indicating a serious danger to society (rule 4.421(b)(1)). The court instructed the jury with CALCRIM No. 324, stating:

> "The People allege in Count 2 the additional allegation that [defendant] engaged in violent conduct, to wit; the defendant robbed Ms. Hernandez and stole money from Mr. Cortez … in the presence of his two-year-old son, which indicates he is a serious danger to society. To prove this allegation, the People must prove that: One, the defendant engaged in violent conduct; and, two, the violent conduct considered in light of all the evidence presented and the defendant's background shows the defendant is a serious danger to society. To determine whether the defendant is a serious danger to society, you may consider the defendant's conduct before or after the commission of the crime as well as evidence about the defendant's background. You may not find the allegation true unless all of you agree the People proved the defendant engaged in violent conduct that shows he is a serious danger to society. However, all of you do not need to agree on which violent conduct shows the defendant is a serious danger to society. You may not find the allegation true unless all of you agree the People proved the defendant's violent conduct was distinctively worse than that posed by an ordinary commission of the underlying crime and that the violent conduct considered in light of the evidence presented and the defendant's background shows the defendant is a serious danger to society. The People must prove this allegation beyond a reasonable doubt. If the

25.

People have not met this burden, you must find the allegation was not proved."

After describing the facts of the instant offenses, the prosecution detailed defendant's criminal history with the jury. An exhibit containing defendant's criminal history was shown to the jury.

The jury found the rule 4.421(b)(1) aggravating factor true.

### ii. Applicable Law and Standard of Review

Rule 4.421(b)(1) states: "The defendant has engaged in violent conduct that indicates a serious danger to society." An aggravating factor "is a fact that makes the offense 'distinctively worse than the ordinary.' " (*People v. Black* (2007) 41 Cal.4th 799, 817, overruled on another ground by *People v. Wiley* (2025) 17 Cal.5th 1069, 1076, 1085; see § 1170, subd. (b)(5) ["The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law."].)

The jury's true finding of an aggravating factor is reviewed for substantial evidence. (*People v. Gragg* (1989) 216 Cal.App.3d 32, 46.) Under this review, "we ask whether ' "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (*People v. Maury* (2003) 30 Cal.4th 342, 403.) " 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' " (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) We "presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*Ibid.*) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis … is there sufficient substantial evidence to support" ' the jury's verdict." (*Ibid.*)

26.

### iii. Analysis

Contrary to defendant's claim, substantial evidence supports the jury's rule 4.421(b)(1) finding. The record shows defendant's robbery of Hernandez was committed a short time after the incident with Cortez and Cortez's two-year-old son. Defendant walked past Hernandez, turned back, and followed her as she tried to get away from him. Once he finally caught up to her, defendant took her cell phone from her. On this record, the jury could have reasonably determined defendant engaged in violent conduct during the course of the robbery of Hernandez, and that the robbery was distinctively worse than an ordinary commission of the underlying crime.

Defendant argues the record does not disclose substantial evidence that the robbery of Hernandez was distinctively worse than an ordinary commission of robbery. We are not persuaded. The record suggests defendant robbed Hernandez because of her proximity in time and location to the Cortez incident. (See *People v. Houston* (2012) 54 Cal.4th 1186, 1215 [" 'We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' "].) Further, based on the close succession of the incidents, the jury could have inferred defendant was willing to rob any member of the public. The jury could have reasonably determined the indiscriminate robbery of Hernandez was distinctively worse than an ordinary robbery since any other nearby member of the public was also at risk of getting robbed. (See *People v. Jennings* (2010) 50 Cal.4th 616, 639 ["If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding."].) Accordingly, substantial evidence supports his conviction. (*People v. Zamudio*, *supra*, 43 Cal.4th at p. 357 ["A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis … is there sufficient substantial evidence to support" ' the jury's verdict."].)

Moreover, although defendant does not appear to challenge the second prong of the aggravating circumstance, we note the jury could have reasonably determined this prong had been established. In addition to the circumstances of the instant offenses, the jury observed defendant's criminal history including defendant's prior convictions spanning multiple decades. There was substantial evidence in the record from which the jury could have reasonably concluded defendant's violent conduct showed he was a serious danger to society. Accordingly, we reject defendant's claim of insufficient evidence.

### B.   *Right to a Jury Trial on Aggravating Factors*

#### i.   **Additional Background**

As stated above, the amended information alleged the following aggravating factors as to count 2: the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness (rule 4.421(a)(1)), defendant has engaged in violent conduct indicating a serious danger to society (rule 4.421(b)(1)), defendant has prior convictions as an adult or sustained petitions in juvenile delinquency proceedings that are numerous or of increasing seriousness (rule 4.421(b)(2)), and defendant has served a prior prison term or jail term under section 1170, subdivision (h) (rule 4.421(b)(3)).

After the jury reached a verdict on the substantive portion of the proceedings, the court held a bifurcated jury trial on the sentencing allegations. The jurors were asked to consider whether defendant had previously suffered a prior serious or violent felony conviction as well as a prior strike conviction. The jurors were also asked to consider whether the aggravating factors in rule 4.421(a)(1) and 4.421(b)(1) were true. The jury found true the prior conviction allegations, and the rule 4.421(b)(1) allegation. The jury found the rule 4.421(a)(1) allegation not true.

The probation department prepared a report prior to sentencing. The report reflected the circumstances of the instant offenses. It also detailed defendant's criminal

history, including a list of defendant's convictions spanning approximately 40 years. The report listed five circumstances in aggravation, including the rule 4.421(b)(1) violation found true by the jury in the bifurcated proceeding. Additionally, the report included the following: defendant's prior convictions as an adult and sustained petitions in juvenile delinquency proceedings were numerous (rule 4.421(b)(2)); defendant's prior performance on probation, parole, and postrelease community supervision was unsatisfactory (rule 4.421(b)(5)); defendant has served one prior California Youth Authority term, four state prison terms, and one prior section 1170, subdivision (h) commitment (rule 4.421(b)(3)); and defendant was on postrelease community supervision and felony probation at the time of the instant offense (rule 4.421(b)(4)). The report listed zero factors in mitigation. The report recommended an upper term sentence on count 2.

Prior to sentencing, the court found the additional aggravating factors (rule 4.421(b)(2)–(5)) true beyond a reasonable doubt. In doing so, the court stated:

> "At this time I am prepared to find true as proven beyond a reasonable doubt [rule] 4.421(b)(2) that there are numerous convictions and they are increasing in seriousness. I will note the numerous convictions that have been presented to the Court including the fact that we have two revocation matters on the docket today including a serious or violent felony revocation in BF191738A for a violation of 245[, subdivision ](a)(1) …, which is a serious felony, and the current offense involves a violent felony involving robbery in violation of [s]ection 212.5[, subdivision ](c). I'll also note that it is clear that [defendant] has served either a prison or [section] 1170[, subdivision ](h) jail term as a result of numerous prior convictions and so I do find each of the allegations as to Count 2 to be proven beyond a reasonable doubt."

At sentencing, the court noted it considered the evidence in the case, the probation officer's report, defendant's mitigating statement, and the factors in aggravation that were proven beyond a reasonable doubt. The court made the following findings:

> "As to mitigating factors, the Court is going to none and is not able to identify any unfortunately on its own. As to circumstances in

29.

aggravation, the defendant has engaged in violent conduct that indicates a serious danger to society within the meaning of [rule] 4.421(b)(1), which was pled and proven in front of a jury. Two, the defendant's prior convictions as an adult and sustained petitions in juvenile delinquency proceedings are numerous as set forth in the probation officer's report. Three, the defendant's prior performance on juvenile probation, numerous grants of misdemeanors probation, numerous grants of felony probation, [section] 1210.1, California Youth Authority Parole, state parole, post-release community supervision has all been unsatisfactory in that he failed to abide by the terms and/or reoffended. Four, the defendant has served one prior California Youth Authority term, four state prison terms and one prior [section] 1170[, subdivision ](h) commitment. And, five, he was on post-release community supervision and felony probation at the time of the instant offense."

The court then sentenced defendant to the upper term on count 2.

### ii. Applicable Law and Standard of Review

On January 1, 2022, Senate Bill No. 567 (2021-2022 Reg. Sess.) went into effect, amending section 1170. Section 1170 authorizes a trial court to "impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) However, the court "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

In *Erlinger v. United States* (2024) 602 U.S. 821 (*Erlinger*), the United States Supreme Court held that, under the Fifth and Sixth Amendments, "[v]irtually 'any fact' that ' "increase[s] the prescribed range of penalties to which a criminal defendant is exposed" ' must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)." (*Erlinger*, at p. 834.) An exception to this allows a trial court to "find *only* 'the fact of a prior conviction.' [Citation.] Under that exception, a judge

may 'do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of.' " (*Id.* at p. 838, italics added.)

In *People v. Wiley*, *supra*, 17 Cal.5th 1069 (*Wiley*), the California Supreme Court addressed section 1170, subdivision (b)(3)'s prior conviction exception in light of *Erlinger*. "To avoid any application that would set section 1170[, subdivision ](b)(3) at odds with the high court's constitutional interpretation, we interpret section 1170[, subdivision ](b)(3)'s procedure in a manner that is coextensive with high court dictates." (*Wiley*, at p. 1086.) Thus, in accordance with *Erlinger*, the *Wiley* court held "a defendant is entitled to a jury trial on all aggravating facts, other than the bare fact of a prior conviction and its elements, that expose the defendant to imposition of a sentence more serious than the statutorily provided midterm." (*Wiley*, at p. 1086, fn. omitted.)

"When a defendant is deprived of a jury trial on aggravating facts used to justify imposition of an upper term sentence, the reviewing court must apply the *Chapman* standard of review." (*Wiley*, *supra*, 17 Cal.5th at p. 1087; *Chapman v. California* (1967) 386 U.S. 18.) "Under that standard, 'a sentence imposed under … section 1170[, subdivision ](b) must be reversed and remanded unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the court relied to conclude the upper term was justified, or that those facts were otherwise proved true in compliance with the current statute.' " (*Wiley*, at p. 1087.)

### iii.    Analysis

Defendant argues the trial court erroneously relied on four aggravating factors not found true by the jury. The People do not appear to dispute that this reliance was erroneous, but instead assert that any error was harmless beyond a reasonable doubt. Defendant disagrees. We agree with defendant that the error was not harmless beyond a reasonable doubt.

First, it was for the jury to determine the truth of the aggravating factors in rule 4.421(b)(1)–(5). (See *Wiley*, *supra*, 17 Cal.5th at p. 1086, fn. omitted ["a defendant is entitled to a jury trial on all aggravating facts, other than the bare fact of a prior conviction and its elements, that expose the defendant to imposition of a sentence more serious than the statutorily provided midterm"].) Only the rule 4.421(b)(1) aggravating factor was found true by the jury. Each of the four aggravating factors found true by the trial court required finding true more than the "bare fact of a prior conviction and its elements." (*Wiley*, at p. 1086.) Accordingly, the court's reliance on each of the other four aggravating factors (rule 4.421(b)(2)–(5)) was erroneous.

Moreover, we cannot conclude that all of these errors were harmless beyond a reasonable doubt. (*People v. Lynch* (2024) 16 Cal.5th 730, 743 ["a sentence imposed under former section 1170(b) must be reversed and remanded unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true *all of the aggravating facts* upon which the court relied to conclude the upper term was justified"], italics added.) Whether a defendant's prior convictions are "numerous or of increasing seriousness" (rule 4.421(b)(2)) is a "comparative and qualitative" determination which makes it " ' " 'difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court.' " ' " (*Wiley*, *supra*, 17 Cal.5th at p. 1090; see *Lynch*, at p. 775 [" ' "[t]o the extent a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court" ' "].) Here, defendant's criminal history consists mostly of misdemeanor convictions. Although defendant appears to have been convicted of six felony offenses, defendant's criminal history spans approximately 40 years. Given the comparative and qualitative considerations involved, we cannot say that a jury

necessarily would have found defendant's convictions numerous or of increasing seriousness. Thus, because the trial court at least relied on its own determination that defendant's juvenile adjudications and adult convictions were "numerous," the matter must be remanded for a jury trial on the aggravating factors.[10]

In light of *Lynch*'s and *Wiley*'s holdings, we cannot conclude that the jury necessarily would have reached the same conclusion on all of the aggravating factors found true by the trial court. On remand, the People may elect to try the aggravating factors.[11] The matter is remanded for a full resentencing.[12]

---

[10]   It is not clear from the record what extent, if any, the trial court relied on its additional determination under rule 4.421(b)(2) that defendant's convictions were "increasing in seriousness." Though the court initially stated it had found true "there are numerous convictions *and they are increasing in seriousness*" (italics added), the court later made no reference to its "increasing in seriousness" determination when stating the relied-upon aggravating factors. Even if the court did not rely on this additional determination, the matter must still be remanded for resentencing because we cannot conclude the jury would have reached the same conclusion on all four aggravating factors. (*Lynch*, *supra*, 16 Cal.5th at p. 743.)

[11]   To the extent defendant argues double jeopardy protections bar trial of the aggravating circumstances on remand, we disagree. (See *Lynch*, *supra*, 16 Cal.5th at pp. 777–778 [remanding for further litigation of unproven aggravating factors]; see also *Monge v. California* (1998) 524 U.S. 721, 728 ["Historically, we have found double jeopardy protections inapplicable to sentencing proceedings, [citation], because the determinations at issue do not place a defendant in jeopardy for an 'offense,' [citation]."].)

Further, although we do not reach defendant's argument that rule 4.421(b)(4) and (5) were not properly pled, defendant may elect to raise this argument in the trial court on remand.

[12]   Because the sentence is vacated and the matter is remanded for a resentencing on that count, we do not address defendant's other sentencing-related arguments, including that two of the aggravating factors relied upon by the court were not properly pled, the court erroneously found no mitigating factors, and the court abused its discretion by failing to dismiss the prior conviction allegations under section 1385. We note defendant may make these arguments in the trial court on remand.

## **DISPOSITION**

The sentence is vacated and the matter is remanded for the trial court to conduct a full resentencing consistent with this opinion.  The judgment is otherwise affirmed.

                                                               DE SANTOS, J.

WE CONCUR:

PEÑA, Acting P. J.

HARRELL, J.